WILLIAM E. CROCKETT (SBN 129383)
STEVEN R. SKIRVIN (SBN 179946)
**DION-KINDEM & CROCKETT**
21271 Burbank Boulevard, Suite 100
Woodland Hills, CA 91367
Telephone: (818) 883-4400
Facsimile: (818) 676-0246

Attorneys for Blackstone Oil & Gas, Inc.

STEPHEN F. BIEGENZAHN (SBN 60584)
**LAW OFFICE OF STEPHEN F. BIEGENZAHN**
611 W. 6th Street, Suite 850
Los Angeles, CA 90017-3101
Telephone: (213) 617-0017
Facsimile: (480) 247-5977

Attorneys for Robert Deller and Daniel To

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:07-bk-12994-TA |
| SOUTH COAST OIL CORPORATION, a Delaware corporation, Substantively Consolidated with South Coast Corporation, a Utah corporation, | Chapter 11 |
| | **OMNIBUS REPLY IN SUPPORT OF MOTIONS FOR 2004 EXAMINATIONS OF JAMES J. JOSEPH, CHAPTER 11 TRUSTEE; PERSON MOST KNOWLEDGEABLE AT ANGUS PETROLEUM CORPORATION; LOUIS P. ZYLSTRA, JR.; AND JAMES WILLIAM SCOTT; DECLARATION OF MARK S. DODGE IN SUPPORT** |
| Debtor. | |
| | Date: October 4, 2011
Time: 2:00 p.m.
Place: Courtroom 5B |
| | [Filed concurrently with Supplemental Declaration of Stephen F. Biegenzahn] |

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, AND TO ALL PARTIES ENTITLED TO NOTICE:

1

Blackstone Oil and Gas, Inc. and creditors and shareholders Robert Deller and Daniel To (collectively "Creditors") hereby present their Omnibus Reply in support of their Motions for 2004 Examinations ("Motions") of James Joseph, Chapter 11 Trustee ("Trustee"), Angus Petroleum Corporation ("Angus"), Louis P. Zylstra, Jr. ("Zylstra") and James William Scott (collectively "Deponents") and in response to the Oppositions to the Motions

This reply is based on the following:

1. Why the fight? So long as E&B Natural Resources, Inc. ("E&B") remains firm in renouncing its joint venture with Blackstone that enabled E&B to purchase its half interest in the Springfield Unit and promised an outcome beneficial to creditors and shareholders alike, the moving parties have no choice but to outbid E&B or propose a plan of reorganization that pays all legitimate creditors in full and that allows shareholders to retain most if not all of their equity. There is nothing unusual about seeking information pertaining to an asset of the estate for this purpose.

2. Providing the information sought by the Motions will prejudice no party. Most of the information sought was provided to E&B a year ago, making it available again should not be an unreasonable burden. The moving parties agree to certain concessions (such as bearing copying costs and alternate deposition locations) to reduce perceived burdens that they would have readily agreed to informally, as set forth herein.

3. Not providing the requested information, which was provided to E&B approximately one year ago, gives a year-long competitive advantage to E&B to the detriment of every other prospective bidder.

4. All parties are well aware that Blackstone is not a competitor of Angus.

5. The information sought—information that will allow a determination of the value of Angus stock—an asset of the estate, along with the risks and benefits that go with this asset, is specifically authorized by Rule 2004.

**I.**

**INTRODUCTION**

The short of all these pleadings is that this fight makes no sense. Why are the Motions being opposed? Why did the Motions have to be filed in the first place? Blackstone heard the Court loud and clear when it recently stated that it wants parties to speak with their checkbooks. This is precisely what Blackstone is attempting to do. In order to get out its checkbook, Blackstone needs information to disclose to prospective investors, and it must make disclosures as required under federal and state securities laws. Short of re-establishing the joint venture with E&B that the latter has renounced, the moving parties seek to outbid E&B (and anyone else) or propose a plan that pays all legitimate creditors in full. There is nothing nefarious or unusual about this, it is a rather simple matter that has been blown into a full fledged battle by the Trustee and Angus for reasons that are a mystery to the moving parties.

Blackstone, an investment vehicle created by SCOC shareholders initially to keep their company out of bankruptcy, and later, when this became impossible due to the involuntary petition leading to this Chapter 11, to try to purchase their company out of bankruptcy (Blackstone is also a creditor as set forth in the proof of claim on file in this case), and Messrs. Deller and To who were also officers and/or directors of SCOC or Angus (and supported by many other shareholders) want to raise capital to outbid the current offer of E&B to acquire Angus stock, an asset of the estate, because they believe there is real equity in this estate. *See* Declaration of Mark S. Dodge, attached hereto. In any normal case where sale of assets is the goal (as is the case here), such an intent would be welcomed with opened arms, not closed doors and contention. Evidence of shareholder support will be provided before the hearing.

The excuses for this fight? 1) Mr. Zylstra is too busy, 2) providing the information would be too burdensome, even though they provided most of it a year ago to E&B[1] and while they are willing to provide certain information that they deem relevant in a sales procedure motion

---

[1] The Court correctly noted in its Statement of Decision on OSC re Contempt and on Motion for Terminating Sanctions that E&B was a joint venture partner of Blackstone. Unfortunately, E&B has taken the position that there no such agreement with Blackstone, and therefore, Blackstone is now forced to take this route for what it believes to be the best interests of the shareholders.

3

1  (apparently less information than that requested by these Motions), which may or may not ever
2  be filed, and which may not provide sufficient information (or reasonable time) for the moving
3  parties to mount a competitive bid.

4      It should be said at the outset: the moving parties do not care to whom the Trustee or
5  Angus provide information. They are not seeking information to the exclusion of anyone else.
6  The interest of the moving parties is the best interests of the shareholders. The more money the
7  Angus stock is sold for, the better. If the moving parties are able to take care of the shareholders,
8  the parties with the lowest priority in a bankruptcy, everything else will fall into line for the
9  creditors. That said, by providing information to E&B a year ago, then refusing to provide it to
10  anyone else and fighting reasonable attempts to obtain information, the opposing parties are
11  clearly manufacturing a competitive advantage for E&B. Under these circumstances, even if the
12  moving parties were to receive the requested information today, they would still be behind the
13  eight ball in terms of competing with E&B. All of this begs the question: Why the hostilities?
14  Why shun and delay prospective bidders, and effectively chill the bidding process? What if
15  negotiations with E&B never get to a signed deal and no sales procedure motion is filed? As the
16  Trustee indicates, the moving parties were told about a sales procedure motion (in the most
17  general terms) two months ago, and he also so informed this Court on July 14. On August 29, in
18  his declaration opposing the Motions, the Trustee stated that he was informed that such a motion
19  would be filed within 10 days. Yet here we are at the end of September, with no sales procedure
20  motion on file, and two months of lost time that could have been used to raise capital.

21  **II.**
22  **THERE IS NO PREJUDICE AND NO UNREASONABLE BURDEN**
23  **TO ANY PARTY IF THE RELIEF REQUESTED IS GRANTED**

24      The only prejudice the parties articulate with any detail they would suffer by the
25  document production and depositions is time and money. Standing alone, these prejudices are
26  insufficient, as they are inherent in every document request and every deposition. A mention is
27  made of "irreparable harm," yet no facts are provided to support such an allegation.
28

Because the vast majority of the requested documents were provided to E&B a year ago, what is the prejudice or extraordinary burden to making them available to the moving parties? The moving parties have no objection to 1) bearing the copying costs; 2) documents being made available as they are kept in the ordinary course of business; 3) taking depositions in Orange County (or some other agreed upon time and location), so long as the parties that oppose the location of the depositions make their offices available for this purpose; and 4) signing a reasonable and customary nondisclosure agreement, so long as prospective investors can also sign this agreement and receive relevant and necessary information. These conditions, which the moving parties were always willing to accept with or without a motion, alleviate any perceived undue burden on the parties.

That said, there is no basis to impose what is tantamount to sanctions on the moving parties as a condition of receiving documents and testimony: to bear the cost of attorneys' fees of the counsel that oppose these motions, or post a bond to pay for counsels' fees. Such relief is not contemplated by Bankruptcy Rule 2004 nor Rule 45 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 9016, nor is the information and testimony sought so unusually burdensome or extreme to give rise to grounds for imposing such an extraordinary sanction on the moving parties. The relevant portion of Rule 45 cited by the Trustee pertains only to non-parties—it expressly does not protect parties or their officers. The moving parties submit that both the Trustee and Angus, and those operating Angus—Mr. Zylstra and Mr. Scott, are parties or officers/directors of parties, in this bankruptcy proceeding. While Angus is not a debtor, it is certainly an interested party, and its stock is an asset of the bankruptcy estate. The sale of its stock would have an impact on Angus and the estate. Angus' directors were replaced by an order of this Court. Angus cannot now claim to be a "classic disinterested party subject to a subpoena from a party to a lawsuit to which it has no connection, such as, for example, a non-party bank served with a subpoena requesting all bank records of defendants in a RICO action." *Wells Fargo Bank, N.A. v. Konover,* 259 F.R.D. 206, 207 (D. Conn. 2009) *quoting Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F.Supp. 232, 264-65 (D. Del. 1992). For these

5

1 reasons, Rule 45(c)(2)(B)(ii), incorporated herein through Bankruptcy Rule 9016, simply does
2 not apply to the Trustee, Angus, Zylstra or Scott.

3       The proper procedure would have been for the opposing parties to file a motion for a
4 protective order. They bear the burden to prove undue burden. *Moon v. SCP Pool Corp.,* 232
5 F.R.D. 633, 637 (C.D. Cal. 2005). Assuming they had filed such a motion, their oppositions
6 would have failed to meet that burden because there is no indication how many documents are at
7 issue, or the amount of time involved in compiling and making the documents available (most
8 for the second time). We are left to guess, perhaps intentionally.

9       In the context of this case, the information sought is reasonably necessary for any
10 prospective purchaser to understand the risk in this highly regulated industry and extraordinarily
11 litigious and contentious case.

12       The Trustee requests, without detail, that the scope of the examinations and document
13 production be limited to that set forth in the aforementioned non-existent sales procedures
14 motion. There is not enough information in this request to make an informed response, except to
15 state that 1) the request has no legal basis; 2) such a ruling may prejudice the moving parties as
16 the documents the Trustee intends to make available are presently unknown; and 3) such a ruling
17 will certainly prejudice the moving parties if no such motion is ever filed.

18       The opposing parties also note that the Motions will be moot if a sales procedure motion
19 is filed. This argument assumes that 1) by a sales procedure motion, the Trustee will make the
20 documents sought by the Motions and the proposed deponents available to the moving parties
21 within a reasonable time; and 2) such a motion will be granted. It is apparent from a review of
22 the Oppositions that the Trustee and Angus do not intend to provide all the documents sought by
23 the Motions. Therefore, the Motions will not be rendered moot by a sales procedure motion.

24       The moving parties have no objection to executing a reasonable and customary non-
25 disclosure agreement, so long as they can make information available to prospective investors
26 who also agree to be bound by the agreement. The moving parties note that they have been
27 promised such an agreement for weeks, yet have received nothing.

28

### III.

### THE TRUSTEE AND ANGUS ARE GIVING E&B A COMPETITIVE ADVANTAGE BY REFUSING TO PROVIDE THE REQUESTED INFORMATION

Angus and the Trustee both make the erroneous statement that absent bankruptcy, Blackstone and the shareholders would not have the right to inspect Angus' books and records. They are incorrect. Mr. To was a director of Angus before and during the bankruptcy and in such capacity obviously had the right to inspect Angus' books and records. As the Court is aware, Angus is a wholly owned subsidiary of SCOC. Absent this bankruptcy, there would be no Blackstone, only SCOC shareholders, officers and directors, who have the right under state law to inspect the books and records of SCOC upon reasonable notice. Such records would include the records of Angus. Mr. Deller was an officer of SCOC. As such, he would also have full access to the books and records of Angus if this case were not in bankruptcy. Blackstone, based on its pre-bankruptcy relationship with SCOC had unfettered legal rights to any information it may have requested. *See* Declaration of Mark S. Dodge.

The Trustee notes that the moving parties were offered the documents that were provided to E&B. That is news to the moving parties. The moving parties gladly accept the offer, but request any order granting the Motions to include requiring production of these documents.

### IV.

### THE SCOPE OF REQUESTED EXAMINATIONS ARE PERMITTED BY RULE 2004

Bankruptcy Rule 2004 provides in relevant part that examinations of "any entity" (Rule 2004(a)) is permitted so long as it relates to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge" and in the Chapter 11 context, "the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Bankruptcy Rule 2004(b).

1    The proposed examinations directly relate to the value of Angus stock, an asset of the
2 estate. This alone is sufficient under Rule 2004. The moving parties have always been
3 transparent about the use of this information. Their desire to offer to purchase assets that are for
4 sale or propose a plan of reorganization (*see* Declaration of Mark S. Dodge) is not a bar to
5 examination, rather, it is a proper use of Rule 2004 procedures. The question is, is the value of
6 the Angus stock and the risk and reward attendant to such stock relevant to the case, or the
7 formulation of a plan? The answer is obviously yes. For all these reasons, the information
8 sought by the Motions is proper under Rule 2004.

## V.

## CONCLUSION

For the foregoing reasons, the moving parties respectfully request the Court grant the Motions in their entirety.

DATE: September 26, 2011                LAW OFFICE OF STEPHEN F. BIEGENZAHN

/s/ *Stephen F. Biegenzahn*
By:_____
STEPHEN F. BIEGENZAHN
   Attorneys for Robert Deller and Daniel To


DION-KINDEM & CROCKETT

  /s/ *Steven R. Skirvin*
By:_____
WILLIAM E. CROCKETT
STEVEN R. SKIRVIN
   Attorneys for Blackstone Oil & Gas, Inc.

8

# DECLARATION OF MARK S. DODGE

I, Mark S. Dodge, declare as follows:

1. I have personal knowledge of the facts testified to herein, except as to those stated on information and belief, and as to those, I believe them to be true. If called as a witness, I would competently testify to the matters stated herein.

2. I am the President and General Counsel of Blackstone Oil and Gas, Inc. ("Blackstone").

3. Blackstone is a financing vehicle, not an operator of oil and gas facilities. It was formed in 2007 as an equity firm to invest in the assets and opportunities of South Coast Oil Corporation ("SCOC") and other opportunities in the energy and real estate sectors.

4. Blackstone was engaged by SCOC, pre-bankruptcy, to assist it in raising capital for SCOC and its wholly owned subsidiary Angus Petroleum Corporation ("Angus").

5. Blackstone did in fact raise capital for SCOC and Angus and funded a loan to Angus in 2007 to cover pressing obligations in preparation for re-commencing operations.

6. Since the bankruptcy filing, Blackstone has been the subject of frivolous litigation by the "creditors" who petitioned to put SCOC into an involuntary bankruptcy. It should be noted that Blackstone has never initiated litigation.

7. Blackstone is a creditor as set forth in proofs of claim on record in this matter.

8. Blackstone is not, and has never been, a competitor of Angus, unless Angus is an investment vehicle formed for the purposes set forth above. It seeks merely to return fair value to its own shareholders by working to achieve a business solution to this Chapter 11 proceeding that maximizes the assets available to SCOC in a proper, legitimate way, thereby assuring the stakeholders of SCOC a healthy return to them as well.

9. The Town Lot oil reserves of SCOC, still quite exploitable if done properly, have a verified potential value of over $350,000,000 based on conservative oil price estimates and factoring in all lifting costs, as evidenced by a study done by E&B in 2010. This totally justifies the efforts of Blackstone to work for the best interests of the shareholders, and its goal of an asset purchase or plan of reorganization that can pay all legitimate creditors in full and allows

1  shareholders to retain all or part of their equity, depending on the amount of capital necessary to
2  accomplish this goal.  Blackstone has the approval of the shareholders to work towards this goal.
3      10.    I am informed that Mr. Daniel To was a director of Angus, both pre and post
4  bankruptcy, until removed by Mr. Joseph in 2009.
5      11.    I am also informed that Mr. Robert Deller was an officer of SCOC, also both pre
6  and post bankruptcy.
7      12.    Blackstone, by virtue of its pre-bankruptcy relationship with SCOC wherein it
8  was requested to raise capital for SCOC and Angus, had legal rights to access any and all books
9  and records of SCOC or Angus upon request.
10     I declare under penalty of perjury under the laws of the United States of America that the
11  foregoing is true and correct.  Executed this 26th day of September, 2011 at Agoura Hills,
12  California.

*/s/ Mark S. Dodge*

———————————————
MARK S. DODGE

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.

Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21271 Burbank Blvd., Suite 100, Woodland Hills, CA 91367.

A true and correct copy of the foregoing document described as ***OMNIBUS REPLY IN SUPPORT OF MOTIONS FOR 2004 EXAMINATIONS OF JAMES J. JOSEPH, CHAPTER 11 TRUSTEE; PERSON MOST KNOWLEDGEABLE AT ANGUS PETROLEUM CORPORATION; LOUIS P. ZYLSTRA, JR.; AND JAMES WILLIAM SCOTT; DECLARATION OF MARK S. DODGE IN SUPPORT*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***September 26, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***September 27, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Theodore C. Albert
U.S. Bankruptcy Court
Courtroom 5B
411 West Fourth Street
Santa Ana, CA 92701

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**(indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 26, 2011 | Steven R. Skirvin | */s/ Steven R. Skirvin* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

11

**SERVICE LIST**

Raymond H. Aver, ray@averlaw.com
Ron Bender, rb@lnbrb.com
Frank Cadigan, frank.cadigan@usdoj.gov
Cathrine M. Castaldi, ccastaldi@rusmiliband.com
Marcus Colabianchi, mcolabianchi@thelenreid.com
Lei Lei Wang Ekvall, lekvall@wgllp.com
Anthony A. Friedman, aaf@lnbrb.com
Philip A. Gasteier, pag@lnbrb.com
Brian L. Holman, b.holman@mpglaw.com
Robert E. Huttenhoff, rhuttenhoff@shbllp.com
James J. Joseph, KValbuena@dgdk.com
Stuart I. Koenig, Skoenig@cmkllp.com
David W. Levene, dwl@lnbrb.com
Mark H. Mcguire, mmcguire@brownwhitelaw.com
Hutchinson B. Meltzer, hmeltzer@wgllp.com
George B. Newhouse, Jr., gnewhouse@brownwhitelaw.com
David M. Poitras, dpoitras@jmbm.com
Max E. Rawn, mrawn@richardsonpatel.com; bkdepttnef@richardsonpatel.com
Ronald Rus, rrus@rusmiliband.com
Leonard M. Shulman, lshulman@shbllp.com
United States Trustee (SA), uspregion16.sa.ecf@usdoj.gov
Anne A. Uyeda, auyeda@bmkattorneys.com
David Weinstein, dweinstein@hro.com
Sharon Z. Weiss, sharon.weiss@hro.com
Mark C. Bailey, mcb@clintonbailey.com
Sean T. McGee, seantmcgee@clintonbailey.com
Jeffrey W. Broker, jbroker@brokerlaw.biz